UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AZAR A. JACKSON, JR., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 16-cv-00010 <br> ) |
| CAROLYN W. COLVIN, | ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

Plaintiff Azar A. Jackson, Jr., challenges a decision by the Social Security Administration ("SSA") denying his applications for disability benefits. Plaintiff contends that (1) the Administrative Law Judge ("ALJ") who reviewed the SSA's denial of benefits failed to comply with the requirements governing such review, and (2) the Appeals Council of the Office of Disability Adjudication and Review erred by not addressing new, relevant medical evidence that Plaintiff had obtained after the administrative hearing.

This matter is before the court on Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance. For the reasons stated below, the court grants Plaintiff's Motion and remands for further proceedings consistent with this Memorandum Opinion.

**II.  BACKGROUND**

    **A.  Plaintiff's Social Security Administration Applications**

Plaintiff Azar A. Jackson, Jr., suffers from several medical conditions, including, as relevant here, bipolar disorder, attention-deficit hyperactivity disorder ("ADHD"), narcolepsy with

cataplexy, and insomnia. Admin. Rec., ECF No. 9 [hereinafter A.R.], Pt. 7, ECF No. 9-6 [hereinafter A.R. Pt. 7], at 319.[1] Plaintiff filed two applications for disability benefits with the Social Security Administration ("SSA"): (1) an application for Disability Insurance Benefits on September 16, 2011, and (2) an application for Supplemental Security Income on April 24, 2012. A.R., Pt. 6, ECF No. 9-5 [hereinafter A.R. Pt. 6], at 173–89. In his applications, Plaintiff claimed that he had been unable to work since August 2011 due to several medical ailments, including "[m]ental problems" and "[d]epression." *Id.* at 173; A.R. Pt. 7 at 217. The SSA denied both applications on January 6, 2012, on the ground that Plaintiff had failed to allege a compensable disability. Shortly thereafter, it denied his request for reconsideration. A.R., Pt. 4, ECF No. 9-3 [hereinafter A.R. Pt. 4], at 62–105; A.R., Pt. 5, ECF No. 9-4 [hereinafter A.R. Pt. 5], at 102–05, 109–22.

### B. The ALJ's Ruling

Plaintiff requested an administrative hearing to review the SSA's decision. A.R. Pt. 5 at 124–26. That hearing occurred on July 8, 2014. A.R., Pt. 3, ECF No. 9-2 [hereinafter A.R. Pt. 3], at 40–61. At the hearing, the Administrative Law Judge ("ALJ") received documentary evidence detailing the severity of Plaintiff's disability and heard live testimony from Plaintiff and Georgette Gunther, a vocational expert. *Id.*

The SSA uses a sequential five-step process to evaluate a disability claim, and the ALJ engages in that same process anew upon review. *See* 20 C.F.R. § 404.1520(a)(4). The inquiry requires that the ALJ evaluate: (1) the claimant's current and past work activity; (2) the severity and duration of the claimant's medically determinable impairments; (3) whether the impairments meet the requirements outlined in the SSA's Listing of Impairments; (4) the claimant's residual

---

[1] All pin citations to the Administrative Record reflect the Bates-stamp pagination in the lower right-hand corner of the document.

functional capacity ("RFC") and past relevant work experience; and (5) the claimant's ability to adjust to other work that exists in the national economy. *Id*. § 404.1520(a)(4)(i)–(v); *see* 42 U.S.C. § 423(d)(2)(A). The applicant bears the burden of proof as to the first four factors; if he meets each of those criteria, then the burden shifts to the SSA to satisfy the fifth factor by demonstrating that the applicant is able perform other work. *See Jones v. Astrue*, 647 F.3d 350, 352–53 (D.C. Cir. 2011). To carry its burden on the fifth factor, the SSA must consider the applicant's RFC, age, education, and work experience in demonstrating that there are jobs in the national economy that the applicant can perform. *See id.* at 353. "If there are not, the claimant is disabled and eligible for benefits." *Id.*

In a ruling issued on August 13, 2014, the ALJ followed the five-step process outlined above and affirmed the SSA's denial of Plaintiff's applications. A.R. Pt. 3 at 18–34. The ALJ began his written decision by quickly dispensing with steps one through three, finding that: (1) Plaintiff had not engaged in substantial, gainful activity since August 2011; (2) Plaintiff's bipolar disorder and ADHD were severe, but his narcolepsy was not severe; and (3) Plaintiff did not have a qualifying impairment, as defined by the Listing of Impairments. *Id*. at 23–26.

Although having found against Plaintiff at step three, the ALJ nevertheless moved to step four and discussed in detail Plaintiff's past work history and RFC. The ALJ first recounted the medical evidence he had reviewed and the testimony he had heard. He then found that Plaintiff had the RFC to maintain employment that "require[d] performing only simple, one to four-step routine, repetitive tasks in a work environment that require[d] only occasional contact with co-workers and supervisors and no contact with the general public." *Id*. at 26–34. The ALJ further concluded that the "medical evidence" "demonstrate[d] that [Plaintiff] would be able to work full-time within the parameters" of that RFC (i.e., performing simple, repetitive tasks in relative

isolation). *Id*. at 31. Notably, in reaching his conclusion, the ALJ discounted the medical opinion of one of Plaintiff's treating physicians, Dr. Julian Redditt, and did not credit Plaintiff's own description of his disabilities. Specifically, the ALJ "assigned little weight" to the opinion of Dr. Redditt and, instead, assigned "great weight" to the opinion of Dr. Norman Kane, the SSA consultant who reviewed Plaintiff's disability claim in 2012. *Id*. at 31–32. Additionally, the ALJ found that Plaintiff's description of the severity of his disability was not credible in light of other record evidence, including the fact that Plaintiff had been attending acting classes during the alleged disability period. *Id*. at 31.

Finally, the ALJ addressed step five and determined that, in light of Plaintiff's RFC, and "[b]ased on the testimony of the vocational expert," Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*. at 33–34. The ALJ thus concluded that Plaintiff did not qualify for disability benefits and affirmed the SSA's denials of benefits. *Id*.

### C. Administrative Appeal

Dissatisfied with the ALJ's decision, Plaintiff submitted a letter to the Appeals Council of the Office of Disability Adjudication and Review (the "Appeals Council") to request review. *Id*. at 17. Plaintiff also asked for time to submit additional medical evidence, including the results of anticipated narcolepsy tests to be performed by Plaintiff's neurologist, Dr. Samuel Potolicchio. *Id*. The Appeals Council granted the request for additional time by letter dated October 30, 2014, wherein it invited Plaintiff to submit any "new and material evidence." *Id*. at 8–9. Plaintiff later submitted additional evidence, which included: (1) two opinion letters from Dr. Potolicchio, dated July 24, 2014, and (2) the results of a wakefulness test performed by Dr. Potolicchio on November 20, 2014, which found that Plaintiff had "remarkable [and] significant daytime sleepiness,

4

apparently not responsive to stimulant medication taken during the test." A.R., Pt. 11, ECF No. 9-10 [hereinafter A.R. Pt. 11], at 1368–72.

On November 6, 2015, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. A.R. Pt. 3 at 1–7. Although the Appeals Council acknowledged receipt of the new evidence and made it part of the record, the Appeals Council did not specifically explain why that evidence did not warrant a reversal of the ALJ's decision. *Id.* at 2, 6.

Plaintiff then filed this action, challenging the SSA's denial of benefits. *See* Compl., ECF No. 1. This matter is now before the court on Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance.

## III.   LEGAL STANDARD

An unsuccessful applicant for benefits may seek review of the SSA's decision by a federal district court. 42 U.S.C. § 405(g). "[T]he 'Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards.'" *Jones*, 647 F.3d at 355 (quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)). The court must defer to the ALJ's decisions concerning the weight given to the evidence and may not substitute its judgment for that of the ALJ. *Butler*, 353 F.3d at 999. A reviewing court, however, should be able to discern how the ALJ reached his decision. *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). Ultimately, the inquiry involves determining whether "the ALJ . . . has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Id*. (internal quotation marks omitted). If not, the court must remand the case to the SSA for further proceedings. *Id*. at 1050–53.

## IV. DISCUSSION

Plaintiff urges reversal of the SSA's denial of benefits for five reasons. First, he argues that the ALJ failed to adequately consider the opinion evidence of one of his treating physicians, Dr. Lillian Kaye. Second, he maintains that the ALJ did not give sufficient weight to another of his treating physicians, Dr. Julian Redditt. Third, he asserts that the ALJ did not adequately explain his basis for finding that Plaintiff's testimony lacked credibility. Fourth, he contends that the ALJ posed flawed hypothetical questions to the vocational expert, which failed to reflect Plaintiff's true medical conditions, and thereafter erroneously relied on the expert's deficient opinion testimony. Pl.'s Mot for J. of Rev., ECF No. 18, Ex. 1, Mem. in Supp., ECF. No. 18-1 [hereinafter Pl.'s Mot.], at 9–17. Finally, Plaintiff maintains that the Appeals Council erred in affirming the ALJ's decision without addressing the post-hearing evidence Plaintiff submitted concerning the scope and severity of his narcolepsy. *Id*. at 17–24.

Defendant counters that the ALJ adequately weighed all of the relevant medical evidence and provided a well-reasoned decision. Def.'s Mot. for J. of Aff., ECF No. 19 [hereinafter Def.'s Mot.], at 13–22. It also responds that the Appeals Council did not err by failing to address Plaintiff's additional medical evidence, because that evidence was neither "new" nor "material" and, regardless, the Appeals Council was not required to articulate its basis for not crediting the new evidence. *Id*. at 22–29.

For the reasons explained below, the court agrees with Plaintiff that the ALJ erred by (1) failing to address Dr. Kaye's opinion concerning the impact of Plaintiff's narcolepsy on his ability to work, and (2) posing improper hypotheticals to Plaintiff's vocational expert. As the court explains below, because those rulings warrant a remand and a re-evaluation of the evidence, the court need not reach the remaining issues.

## A. Inadequate Consideration of Dr. Kaye's Opinions

In the D.C. Circuit, an ALJ must abide by the "treating physician rule." That rule provides that, "[b]ecause a claimant's treating physicians have great familiarity with [his] condition, their reports must be accorded substantial weight." *Butler*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). The opinion or reports of a treating physician are therefore "binding on the fact-finder unless contradicted by substantial evidence." *Id.* (internal quotation marks omitted). Accordingly, an ALJ "who rejects the opinion of a treating physician" must "explain his reasons for doing so." *Id.* (internal quotation marks omitted).

Plaintiff contends that the ALJ violated the treating physician rule when he failed to consider the opinion evidence supplied by Plaintiff's treating psychotherapist, Dr. Lillian Kaye. Pl.'s Mot. at 11. He is correct. Plaintiff provided the ALJ with a letter from Dr. Kaye, dated June 18, 2014. A.R. Pt. 7 at 313–14. In that letter, Dr. Kaye clearly stated that she had been "providing psychotherapy services to [Plaintiff] since December 17, 2012." *Id.* at 313. Although she acknowledged that Plaintiff's narcolepsy was "relatively well-managed" at the time she was writing the letter, she also opined that "it seem[ed] less likely that he would be successful in a full-time position with a rigid structure and lack of flexibility of schedule." *Id.* at 313–14. That opinion is important. While the ALJ found that Plaintiff "would be able to work full-time within the parameters" of his RFC, *see* A.R. Pt. 3 at 31, Dr. Kaye's opinion was that Plaintiff's ability to succeed in full-time employment was "less likely" absent meaningful accommodations, *see* A.R. Pt. 7 at 313–14. Under the treating physician rule, the ALJ was bound either to assign controlling weight to Dr. Kaye's opinion or provide explicit justification for disregarding it. *Butler*, 353 F.3d at 1003. He did neither. Nowhere does the ALJ's decision mention, let alone address, Dr. Kaye's opinion that Plaintiff's narcolepsy limited his ability to do full-time work. The decision does twice

mention Dr. Kaye, but it does so only to support the finding that Plaintiff's narcolepsy was "well managed." A.R. Pt. 3 at 24–25. The ALJ was not permitted, however, to rely on only one portion of Dr. Kaye's opinion while disregarding the other. Instead, the ALJ was required to consider the opinion in its entirety, which he did not do. *Cf. Jones*, 647 F.3d at 355–56 (holding that ALJ committed erred by failing to explain his reasons for rejecting the claimant's treating physician's opinion, even though the ALJ had accepted some of the physician's conclusions).

Defendant argues that the ALJ was not required to address Dr. Kaye's opinion because her opinion is "vague," "irrelevant," and did not contradict the opinions of other physicians that the ALJ considered in making his decision. Def.'s Mot. at 17. Defendant further argues that, because Dr. Kaye did not provide contemporaneous treatment notes, her "retrospective opinion is, thus, a vocational one, [in] an area for which she has presented no credentials or identified no specific job to which she is referring." *Id*. Those arguments are unpersuasive. Dr. Kaye's opinion is not "irrelevant"—after all, she was Plaintiff's treating provider for the preceding 18 months—and it is not "vague"—she clearly explained why she held a dim view of Plaintiff's full-time work prospects. Moreover, Defendant's other reasons for discounting Dr. Kaye's opinion are not relevant because those reasons were never articulated by the ALJ. Defendant cannot cure a deficient administrative judgment by way of post-hoc, litigation-produced justifications. *See Jones*, 647 F.3d at 356 ("The treating physician rule requires an explanation by the SSA, not the court."); *see also Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 49–50 (1983).

Accordingly, the court finds that the ALJ erred in neglecting to address Dr. Kaye's opinion on the effect of Plaintiff's narcolepsy on his ability to engage in full-time work.

8

## B.  Questioning of the Vocational Expert

The court also finds that the ALJ posed factually deficient hypothetical questions to Plaintiff's vocational expert. An ALJ may rely on a vocational expert's answers to hypothetical questions about the claimant's ability to do certain types of work. *Butler*, 353 F.3d at 1005–06. The ALJ, however, "must accurately describe the claimant's physical impairments in any question posed to the expert." *Id*. at 1005. Deficiencies in the ALJ's description of the claimant's condition "undermine the foundation for the expert's ultimate conclusion that there are alternative jobs" the claimant is capable of performing. *Id.* at 1006; *see also Williams*, 997 F.2d at 1499.

Here, the ALJ did not, as required, incorporate Plaintiff's medical conditions into his hypothetical questions. The ALJ had the following exchange with Plaintiff's vocational expert, Georgette Gunther, at the hearing:

> Q: Ms. Gunther, I'd like to begin by posing some hypotheticals to you. For the sake of these hypotheticals, please assume an individual who's between the ages of 34 and 37, who's got a high school degree and some college, without the attainment of any college degree, and past work experience such as you've testified to the Claimant having. If one were to assume that a person with that background had the ability to perform a full range of light work, provided that such work not require performing more than simple, one to four step routine, repetitive tasks in a work environment where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, given those limitations would that person be capable of performing any of the past work done by the Claimant?
>
> A: No past work, Your Honor.
>
> Q: Would there be other work for an individual with that background and those limitations?
>
> A: Yes. . . .
>
> Q: For the second hypothetical, what would generally be considered to be an acceptable amount of daily time off task such that the individual would still remain competitively employable?

9

> A: That is not in the DOT. In my opinion, Your Honor, they need to be on task 85 percent of the workday.
>
> Q: For the third hypothetical, what's generally considered to be an acceptable number of missed days of work per month such that the individual would remain competitively employable?
>
> A: Also not in the DOT. In my opinion, no more than one absence per month.
>
> Q: For the fourth hypothetical, if this same hypothetical individual were unable to perform simple, one to four step routine, repetitive tasks, would there be any work available for them?
>
> A: No, Your Honor.

A.R. Pt. 3 at 47–48. As the quoted text shows, the ALJ did not mention, let alone describe, any of Plaintiff's claimed disabilities in any hypothetical that he posed to Gunther. That deficiency in questioning was a mistake.

Defendant's arguments to the contrary are unavailing. *See* Def.'s Mot. at 21–22. First, Defendant asserts that the ALJ did not incorporate Plaintiff's medical limitations into the hypothetical questions because he found that those limitations were not supported by the evidence. That argument is a nonstarter because the ALJ never offered an explanation for not incorporating Plaintiff's medical conditions into his hypotheticals. *See Jones*, 647 F.3d at 356. Second, Defendant insists that the ALJ's questioning was proper because it "accurately reflected all of the elements" of Plaintiff's RFC. That contention also is misplaced because the D.C. Circuit rejected that very argument in *Butler*. There, the court found that the ALJ's hypothetical questions were "defective" because they omitted significant aspects of the claimant's medical condition, even though the questions incorporated a description of the claimant's RFC. *See Butler*, 353 F.3d at 1005–06 (citing *Simms v. Sullivan*, 877 F.2d 1047, 1053 (D.C. Cir. 1989)). That holding squarely applies here. Therefore, the court finds that the ALJ committed error by posing incomplete

hypothetical questions to Plaintiff's vocational expert and then relying on her answers in making his decision. *Id*.

### C. Consideration of Plaintiff's New Medical Evidence on Remand

Having concluded that the ALJ made two missteps, the court will remand this case for further proceedings. An open question remains, however, as to the type of remand and, specifically, whether the SSA must consider Plaintiff's additional, post-hearing evidence on remand.

Section 405(g), which governs judicial review of final SSA decisions, authorizes two types of remands: those pursuant to sentence four of that section and those pursuant to sentence six of that section. *Melkonyan v. Sullivan*, 501 U.S. 89, 97–98 (1991). Under sentence four of § 405(g), a district court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Under the sentence six of § 405(g), the district court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

Thus, the two types of remands are "entirely different" from one another. *Sullivan v. Finkelstein*, 496 U.S. 617, 629 (1990). The "fourth sentence directs the entry of a final, appealable judgment even though the judgment may be accompanied by a remand order," *id.* at 626, while, under sentence six, the district court "does not rule in any way as to the correctness of the administrative determination," *Melkonyan*, 501 U.S. at 98. "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior

11

proceeding." *Id.* After a sentence six remand is completed, the SSA "must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.'" *Id.* (quoting 42 U.S.C. § 405(g)). Thus, unlike a sentence four remand, a sentence six remand is not a final, appealable judgment. Instead, the district court retains jurisdiction over the case.

At a minimum, this case requires a remand under sentence four so that the ALJ can address the deficiencies discussed in this opinion. The D.C. Circuit has not addressed whether, on a sentence four remand, a district court may order the SSA to consider new evidence. *See Jones*, 647 F.3d at 357 n.2. It has held, however, that when the ALJ makes a clear error *and* the claimant comes forward with new and material evidence, a district court may remand the case under both sentence four and sentence six, thus extinguishing the court's jurisdiction but also ensuring that the new evidence is considered by the SSA. *See id.* at 355–59. In *Jones*, after finding that the ALJ had violated the treating physician's rule, the court remanded under sentence four, so that the ALJ could "explain what weight he attaches to the [treating physician's] conclusions, or if he attaches none, his reason therefor." *Id.* at 357 (internal quotation marks omitted). The court simultaneously ordered remand under sentence six for the SSA to consider new evidence that the claimant obtained after he had filed suit in district court. *See id.* at 357–59.

The court follows that precedent here. The court remands to the SSA under sentence four of Section 405(g) so that the ALJ may (1) consider what weight to give to Dr. Kaye's opinion and thus properly apply the treating physician rule, and (2) pose hypothetical questions that sufficiently incorporate Plaintiff's medical conditions, including those conditions as described by Plaintiff's treating physicians.

12

The court also remands under sentence six of Section 405(g) for the SSA to consider the evidence that Plaintiff acquired after his hearing; namely, the two opinion letters from Dr. Potolicchio and the results of Plaintiff's wakefulness test. A sentence six remand has three requirements. There must be "[1] new evidence [2] which is material and [3] [the claimant must demonstrate] good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "The first and third requirements for a sentence six remand are satisfied when there is new 'evidence not in existence or available to the claimant at the time of the administrative proceeding.'" *Jones*, 647 F.3d at 357–358 (quoting *Sullivan,* 496 U.S. at 626). As to the second requirement, new evidence is "material" only if the claimant shows that the new evidence "might have changed the outcome of the prior proceeding." *Melkonyan*, 501 U.S. 89 at 98. Here, the first and third requirements are met because the evidence presented by Plaintiff to the Appeals Council was not "in existence or available to [Plaintiff] at the time of the administrative proceeding." *Sullivan,* 496 U.S. at 626; *see also Jones*, 647 F.3d at 357 (finding that evidence was new because it was not "available, or even in existence, at the time of the ALJ hearing").

And the new evidence is material. Dr. Potolicchio has treated Plaintiff's narcolepsy since October 2013. A.R. Pt. 11 at 1368. In two July 24, 2014, letters, Dr. Potolicchio explained that, notwithstanding a drug regimen, "[Plaintiff] still has bouts of persistent sleepiness during the day" and Plaintiff has difficulty waking up in the morning, resulting in frequent tardiness to his daily obligations. *Id.* at 1368–69. Because of these conditions, Dr. Potolicchio recommended an accommodation of a 30 to 45-minute nap in a quiet area during the day and an organized morning work schedule. In addition, the November 2014 wakefulness test determined that Plaintiff "was unable to maintain wakefulness" for extended periods, a result that Dr. Potolicchio described as

"remarkable for significant daytimes sleepiness, apparently not responsive to stimulant medication taken during the test." *Id*. at 1372. This new evidence "might have changed the outcome of the prior proceeding," particularly when weighed alongside the opinion of Dr. Kaye and answers to properly posed hypothetical questions to Plaintiff's vocational expert. *Melkonyan*, 501 U.S. at 98. It might have caused, among other things, the ALJ to draw different conclusions about the impact of Plaintiff's narcolepsy on his ability to do full-time work, credit Plaintiff's description of the effects of his narcolepsy, and give greater weight to the opinions of Plaintiff's treating physicians. The new evidence therefore meets the requirements of a sentence six remand.

Separate and apart from a sentence six remand, the SSA's own regulations contemplate that Plaintiff would be able to present the medical evidence in further proceedings before the SSA. "When a Federal court remands a case to the Commissioner for further consideration . . . [a]ny issues relating to [the] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [the] case." 20 C.F.R. § 404.983. Thus, even if the court remanded this matter only under sentence four, the SSA still would be required to consider Plaintiff's additional evidence concerning his narcolepsy. *See Shamsian v. Barnhart*, 51 Fed. App'x. 692, 693 (9th Cir. 2002) (citing 20 C.F.R. § 404.983); *Hollins v. Massanari*, 49 Fed. App'x. 533, 536 (6th Cir. 2002) (same). [2]

---

[2] On remand, Plaintiff also will be able to argue anew that Dr. Redditt's opinions are entitled to "great weight" and that his testimony is credible. *See* 20 C.F.R. § 404.983; Pl.'s Mot. at 12. For that reason, the court need not reach Plaintiff's contentions that the ALJ wrongly discounted both Dr. Redditt's medical opinion and Plaintiff's own testimony.

## V. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion for Judgment of Reversal and denies Defendant's Motion for Judgment of Affirmance. The court hereby remands the case to the SSA for further proceedings consistent with this Memorandum Opinion.

A separate Order accompanies this Memorandum Opinion.

Dated: April 27, 2017

Amit P. Mehta
United States District Judge